**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

**101 West Lombard Street**
**Baltimore, Maryland 21201**
**MDD_DRMChambers@mdd.uscourts.gov**
**(410) 962-7770**

October 30, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Nicholas S. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-3601-DRM

Dear Counsel:

On November 3, 2025, Plaintiff Nicholas S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 13, 17 and 18). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on November 30, 2022, alleging a disability onset of May 1, 2020. Tr. 17, 164-72. Plaintiff's claims were denied initially and on reconsideration. Tr. 99-103, 105-08. On December 19, 2024, an Administrative Law Judge ("ALJ") held a hearing. Tr. 14-36. Following the hearing, on January 17, 2025, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 et seq., during the relevant time frame. *Id.* The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 30, 2022, the application date." Tr. 19. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "Major Depressive Disorder; Obsessive Compulsive Disorder; Anxiety Disorder; Cannabis Abuse; and Degenerative Disc Disease-Lumbar/Cervical." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairment of "binge eating disorder." Tr. 20. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant can perform occasional posturals such as balancing, climbing, stooping, kneeling, crouching, and crawling. He can frequently reach, including overhead and lateral reaching using his left upper extremity. He should avoid concentrated exposure to extreme cold, and to hazardous machinery and unprotected heights. The claimant can understand, remember, and carry out simple instructions. The claimant can maintain concentration and pace for 2 hours at a time, sufficient to be able to complete an 8-hour workday. He cannot perform work requiring specific rate production such as assembly line work or work that requires hourly quotas. The claimant can occasionally interact with coworkers and supervisors, but no tandem tasks. He cannot have direct interaction with the general public. He can only tolerate occasionally changes in routine work setting.

Tr. 22. At steps four and five, the ALJ determined that Plaintiff has no past relevant work, but could perform other jobs that existed in significant numbers in the national economy such as Sorter II, Bander, and Tag Inserter. Tr. 29-30. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 31.

## III. <u>LEGAL STANDARD</u>

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review

of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff argues that the ALJ's RFC and step-five findings are unsupported by substantial evidence because the ALJ set forth an inadequate hypothetical to the vocational expert ("VE") by including an undefined limitation: "specific rate production such as assembly line work or work that requires hourly quotas," which he also included in the RFC, thus rendering the decision unreviewable. ECF No. 13 at 7-12. Plaintiff cites *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019) to support the argument that remand is warranted where a limitation proposed by the ALJ in his hypothetical is not defined by common meaning, regulation, or the Dictionary of Occupational Titles ("DOT"). *Id.* Plaintiff further argues that mere examples, such as "assembly line work" or "hourly quotas" do not meaningfully clarify the scope of the limitation or permit meaningful review, and therefore remand is warranted. *Id.*

The Commissioner counters that Plaintiff's challenge fails because the "specific rate production" limitation is commonly understood, adequately clarified by the examples given, and demonstrated by the record, making it susceptible to meaningful judicial review. ECF No. 17 at 5-8. The Commissioner also argues that Plaintiff forfeited the issue by failing either to object to the challenged phrase at the hearing or to seek clarification by questioning the VE about the phrase or how it applied to the identified jobs. *Id.* at 5. Plaintiff replies that he is not challenging the VE's testimony, but rather "the ALJ's own RFC finding and the hypothetical incorporating it because neither reveals what functional restriction the ALJ intended." ECF No. 18 at 2.

Addressing first the issue of forfeiture: The Commissioner cites *Alisha D. v. Saul*, No. TMD-18-1567, 2019 WL 4643796, at *5 (D. Md. Sept. 24, 2019), for the proposition that "[a]ny challenge to the VE's testimony other than one asserting a conflict with the [DOT] required objection during the hearing." In *Alisha D.*, the ALJ rejected post-hearing objections challenging a VE's testimony. While ruling primarily on substantive grounds, the ALJ also found in the alternative that the claimant's representative had waived his right to object when he chose not to appear at the hearing. *Alisha D.*, 2019 WL 4643796, at *4. On review, this Court cited the language relied on by the Commissioner here. *Alisha D.*, 2019 WL 4643796, at *5 (citing *David E. v. Saul*, No. 18 C 727, 2019 WL 4034496, at *10 (N.D. Ill. Aug. 27, 2019)).

However, the Court does not appear to have relied on that principle in rejecting Alisha D's challenge to the ALJ's rejection of the post-hearing objections.[1] Rather, the Court held that the ALJ's action did not constitute a statutory or constitutional violation, even if it may have violated HALLEX guidelines. In that sense, the relied-on language from *Alisha D.* is dicta.

---

[1] The Court ultimately remanded the decision on different grounds. *Alisha D.*, 2019 WL 4643796, at *5-6.

Even assuming that challenges of the type made in *Alisha D.* to VE testimony are waived if not made at the hearing, this Court agrees with Plaintiff that the argument he raises is distinguishable. Plaintiff notes that he

> is not disputing the expert's methodology, job-number estimates, or testimony about the requirements of a particular occupation. Plaintiff challenges the ALJ's own RFC finding and the hypothetical incorporating it because neither reveals what functional restriction the ALJ intended. The ALJ's obligation to articulate a reviewable RFC does not depend upon whether a claimant's representative asks the vocational expert to define terminology chosen by the ALJ. Nor can the vocational expert's silence add a definition that appears nowhere in the hearing testimony or written decision.

ECF No. 18 at 2. The Court agrees and finds that the issue is not forfeited.[2]

Turning to the merits, the Court concludes that the ALJ's decision is not supported by substantial evidence. Courts look "to an existing administrative record and [ask] whether it contains 'sufficient evidence' to support the agency's factual determinations" when reviewing for substantial evidence *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *2 (D. Md. Sept. 3, 2021) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citation omitted)). Agency conclusions must be stated in terms the Court can understand for the Court to conduct substantial evidence review.

In *Thomas*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine "whether their inclusion in [the] RFC is supported by substantial evidence." *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 313, n.5.

Although the court in *Thomas* identified additional grounds for remand, later decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. *See Perry v. Berryhill,* 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions'") (quoting *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015)). *See also, e.g., Adrian H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan.

---

[2] The Commissioner also cites in support of forfeiture a case from the Middle District of North Carolina which is more closely on point, but which is not binding on this Court. ECF No. 17 at 5 (citing *Jessie F. v. Bisignano*, No. 1:24CV995, 2025 WL 1950265, at *4 (M.D.N.C. May 28, 2025), *report and recommendation adopted sub nom. Fulks v. Bisignano*, No. 1:24-CV-995, 2025 WL 1939902 (M.D.N.C. July 15, 2025).

12, 2022) (remanding where an "ALJ presented the VE with a hypothetical including 'no fast pace or strict production requirements,' with no further definition of those terms"); *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021) (remanding where RFC limited plaintiff to work "requiring no fast paced production," which the court analogized to the terms in *Thomas* and *Perry* "both in form and defect"); *Jennifer Anne S. v. Saul*, No. TMD-20-519, 2021 WL 2139432, at *5 (D. Md. May 26, 2021) (remanding where RFC limited plaintiff to work "which would not require a fast pace or production quotas such as would customarily be found working on an assembly line" and collecting cases remanding based on similar undefined RFC terms); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("First, while the phrase 'production rate pace' is used in an appendix to the DOT, a definition is not provided. Second, the term 'production pace or strict production quotas' is directly analogous to the term deemed problematic in *Thomas*, and the Court cannot ascertain how the inclusion of the word 'strict' would cure the problem identified by the Fourth Circuit.")[3]; *Nora P. v. Comm'r Soc. Sec.*, No. SAG-18-1604, 2019 U.S. Dist. LEXIS 68383, at *4-5 (D. Md. Apr. 23, 2019) (remand warranted where RFC failed to define phrase "no fast pace or strict production requirements.").

Some cases have affirmed RFC language or VE hypotheticals in which ALJs have elaborated on "production rate pace," or similar terms, with additional descriptors or examples. *Briana H. v. O'Malley*, No. CDA-23-1288, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024) (affirming where "here, unlike in *Thomas*, the ALJ defined 'production rate' in the hypothetical question to the VE explaining that the 'no production rate requirement' meant 'assembly line work.'"); *Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (affirming where RFC excluded "fast-paced production work" and ALJ stated to VE "[a]nd they could not perform work that would require fast-productivity goals, like — like assembly-line work."). *See also Melissa J. v. Kijakazi*, No. BAH-22-1003, 2023 WL 206686, at

[3] The term "production rate pace" appears in Appendix C to the Department of Labor's *Dictionary of Occupational Titles* ("DOT"), in a section enumerating three situations in which occupations that would otherwise be classified as "sedentary work" (because the amount of weight lifted is negligible) instead qualify as "light work." The third such situation is: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C — Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The discussion goes on to explain: "NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.* Nearly-identical language appears in the DOT's companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), Appendix C – Physical Demands: "working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible." However, no definition is given of "production rate pace" in either volume, and the term's use in this narrow context does not elucidate a general meaning.

*3 (D. Md. Jan. 13, 2023) (collecting cases which "have held a limitation on 'production rate or pace' combined with a prohibition on quotas provides enough detail for judicial review.")

However, the Fourth Circuit subsequently held in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry*, 765 F. App'x at 872). The Court finds the reasoning of *Linger* persuasive[4] in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas. These examples do not ultimately clarify the meaning of terms like "a production rate or demand pace," *Thomas*, 916 F.3d at 312, or "fast paced production requirements," *Linger*, 2025 WL 40548, at *4, and it is questionable whether the outcomes of *Briana H.*, *Jackie W.*, or *Melissa J.* could be the same following this elucidation.

In this case, "specific rate production such as assembly line work or work that requires hourly quotas," is very similar to language which this Court has remanded in several recent cases, often relying on the above clarification in *Linger*. *See, e.g., Prosper v. Bisignano*, No. CJC-25-3546, 2026 WL 3054121, at *2 (D. Md. Oct. 9, 2026) ("work requiring a specific production rate such as assembly line work, or work that requires hourly quotas"); *Joeann S. v. Bisignano*, No. AAQ-25-01954, 2026 WL 2110570 at *1 (D. Md. July 22, 2026) ("fast-paced production requirements such as fast paced assembly line work or high-volume piecemeal quotas"); *Jasmine M. v. Bisignano*, No. JMC-25-3291, 2026 WL 2035198, at *2 (D. Md. July 14, 2026) ("work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas"); *Al-Nissa J. v. Bisignano*, No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026) ("specific production rate pace, such as assembly line work or an hourly production quota"); *Jason M. v. Bisignano*, No. DRM-25-0358, 2026 WL 523879, at *2-*4 (D. Md. Feb. 25, 2026) ("specific rate production, such as assembly line work or work that requires hourly quotas"). *But see Autumn C. v. Bisignano,* No. EA-25-1592, 2026 WL 2042105 at *3 (D. Md. July 15, 2026) (distinguishing *Linger* and holding that "the phrasing employed here—that Plaintiff could 'perform work where she is limited to simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas'—contains commonly understood terms and examples that collectively provide sufficient explanation for appellate review"); *Jennifer G. v. Bisignano*, No. EA-25-2678, 2026 WL 2279330 (D. Md. Aug. 7, 2026).

By contrast, this Court has affirmed ALJ opinions which use the terms "production rate tasks" or "production work" but define them to mean specifically, and only, assembly line or quota-based work. *See Margaret R. v. Comm'r, Soc. Sec. Admin.*, No. DRM-25-2814, 2026 WL

---

[4] Unpublished Fourth Circuit opinions are "cited for the persuasiveness of their reasoning, not for any precedential value." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 n. 5 (D. Md. 2022).

2425935, at *3 (D. Md. Aug. 19, 2026) (affirming where RFC and VE hypothetical included restriction to "simple non-production rate tasks — *meaning no* assembly line work or work requiring meeting strict quotas" (emphasis added) because "even though the term [production rate tasks] may have no generally applicable definition, the ALJ made clear exactly what she meant by it" utilizing two concepts "easily understood in common parlance."); *Seamster v. Bisignano*, No. CJC-25-3069, 2026 WL 2436394 at *4 (D. Md. Aug. 20, 2026) ("Here, the ALJ defined the scope of non-production work through assembly line work, explaining that it '*mean[t]* no assembly line work where coworkers are side by side and the work of one affects the work of others.' Because the ALJ's language defined, rather than exemplified, the pace limitation posed in the hypothetical, it adequately delineated the scope of the limitation.") (Record citation omitted.)

The Court finds that the formulation "specific rate production," Tr. 22, is "analogous to the terms in *Thomas* ('production rate' or 'demand pace') and *Perry* ('non-production oriented work setting'), both in form and defect." *Trena Sue Y.*, 2021 WL 4034264, at *4. The Court further finds that the examples given: "such as assembly line work or work that requires hourly quotas," Tr. 22, fail to clarify the term's meaning for the same reason that the examples "such as assembly line work or piecemeal quotas" failed in *Linger*. The mere inclusion of illustrative examples does not sufficiently define or explain the scope of the restriction. It is therefore difficult for the Court to ascertain whether it was possible for the VE to know whether a person limited to work not involving "specific rate production" could perform the job functions of Sorter II, Bander, and Tag Inserter. The Court thus cannot determine whether the ALJ's RFC or step-five findings were supported by substantial evidence.

In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge